514 A.2d 128

**Linda C. SIMMONS**

v.

**Edward J. SIMMONS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 27, 1986.

Filed Aug. 12, 1986.

Daniel L. Carn, York, for appellant.

Daniel W. Shoemaker, York, for appellee.

Before WIEAND, MONTEMURO and BECK, JJ.:

BECK, Judge:

In this appeal we are asked to determine whether either a levy or a sale of a judgment debtor's personalty pursuant to a writ of execution satisfies the judgment for which the writ was issued when the amount realized through the execution process by the judgment/execution creditor is less than the full sum of the judgment sought to be enforced by the writ of execution. We hold that under such factual circumstances, the judgment is not satisfied but is discharged only to the extent of the proceeds actually obtained by the judgment/execution creditor.

Appellee-wife Linda Simmons acquired against appellant-husband Edward Simmons a judgment for $3024.60 representing child support arrearages. To enforce the judgment, wife obtained the issuance of a writ of execution which directed the sheriff of York County to seize certain items of husband's personal property. The sheriff accordingly seized husband's specified personalty which was subsequently sold at a sheriff's sale. At the sale, wife purchased husband's pop-up camper and Bronco II vehicle for $89.34, the sheriff's costs in the execution procedure.

As a result of the sheriff's sale, wife obtained the camper and Bronco II subject to the claims of the credit company which had lent husband the purchase money for those items and, apparently, had a security interest in them. After the sheriff's sale, the camper and Bronco II were taken by the credit company in payment of the balance of the purchase money loans made to husband. Due to the sheriff's sale of the camper and Bronco II to wife, husband requested that wife have the judgment against him marked satisfied. Wife refused to do so.

The parties' dispute concerning the entry of satisfaction of the judgment was submitted to the Court of Common Pleas of York County which after a hearing on the matter, decided that since wife did not realize any gain from her purchase of the camper and Bronco II, husband was not entitled to have the judgment against him marked satisfied.

From the court order denying his request for entry of satisfaction, husband now appeals.

Under the Pennsylvania Rules of Civil Procedure, a judgment for support arrearages is enforceable by execution upon the judgment. Pa.R.C.P. Nos. 1910.20, 1910.23. To initiate the execution process, the judgment creditor files a praecipe for a writ of execution with the prothonotary of the county where the judgment for support arrearages has been entered. Pa.R.C.P. No. 3103. The prothonotary then issues a writ of execution which contains a notice to the judgment debtor and instructions to the county sheriff concerning the execution. Pa.R.C.P. No. 3252. The notice advises the judgment debtor that his property may be taken through the execution process in an attempt to have the judgment against him satisfied. In addition, the notice explains that some of the judgment debtor's property may be exempt from seizure. Pa.R.C.P. Nos. 3123, 3123.1, 3252; *but see* 42 Pa.C.S.A. § 8123(b) relating particularly to property exemptions in the context of judgments for support. Finally, the notice informs the judgment debtor that he has a right to present a legal defense to prevent the seizure of his property. Pa.R.C.P. Nos. 3119, 3121, 3123, 3123.1, 3252.

The instructions to the sheriff direct the sheriff to levy upon the judgment debtor's property specified in the writ and to sell the judgment debtor's interest therein. Pa.R. C.P. Nos. 3107, 3108, 3109, 3124, 3252. In the context of an execution upon a judgment, a levy consists of a sheriff's actual or constructive seizure of the judgment debtor's property. *Duncan's Appeal*, 37 Pa. 500 (1860); *Welsh v. Bell*, 32 Pa. 12 (1858); *see also Carey v. Bright*, 58 Pa. 70 (1868); *Mills v. Jacobs*, 131 Pa.Super. 469, 200 A. 233 (1938). "The levy is an assertion of title by the sheriff, amounting at least to a legal divestiture of the possession of the [judgment debtor], and such as would subject the officer making it to an action of trespass, but for the protection of the execution." *Duncan's Appeal*, 37 Pa. at 502; *Welsh.*

Therefore, to make a valid levy on a judgment debtor's tangible personal property, the sheriff must prevent the

judgment debtor's immediate enjoyment of the property by either assuming exclusive, physical possession of the personalty or openly exercising power or control over the personalty. *Duncan's Appeal; Welsh; see e.g.*, Pa.R.C.P. Nos. 3109, 3127. A sheriff's levy on the judgment debtor's property listed in the writ of execution constitutes service of the writ upon the judgment debtor where, as in the case sub judice, the writ directs the sheriff to levy upon only tangible personalty. Pa.R.C.P. No. 3108(a)(1).

After at least six days' prior public notice, levied upon personalty adequate in amount to satisfy the judgment, interest and likely execution costs may be sold by the sheriff at a public sale. Pa.R.C.P. Nos. 3124, 3128. The judgment/execution creditor must "pay to the sheriff all costs, charges and expenses incident to the execution, the maintenance of the lien of the execution and the preservation of the [levied upon] property. These items shall be deemed taxable costs for refund to the [judgment/execution creditor] from the proceeds of the [sheriff's sale]...." Pa.R.C.P. No. 3138.

If the judgment/execution creditor or any other creditor entitled to share the proceeds of the sheriff's sale purchases the property offered at the sale, the sheriff must "accept on account of the purchase price the receipt of the purchaser up to the amount of the proceeds to which [the creditor] is entitled." Pa.R.C.P. No. 3133. Nevertheless, the "sheriff may require payment in cash of all legal costs distributable from the proceeds of the sale." *Id.* The proceeds of the sale, if any, are distributed in accordance with Pa.R.C.P. Nos. 3136 and 3137. Thereafter, the sheriff must make a return to the prothonotary who issued the writ of execution and must include in the return any schedule of distribution that was utilized. Pa.R.C.P. No. 3139.

Following the sheriff's sale, a judgment debtor may, in writing, request that a judgment creditor who has received satisfaction of a judgment enter satisfaction in the prothonotary's office where the judgment is outstanding. 42 Pa.C.S.A. § 8104(a).

Against the backdrop of the procedural steps involved in executing on a judgment, we now consider the arguments raised by husband in the present appeal. Husband contends first that, in and of itself, the levy upon (sheriff's seizure of) his personal property sufficed to discharge fully the judgment underlying wife's writ of execution and that he is thus entitled to have the judgment marked satisfied regardless of the outcome of the sheriff's sale of the personalty. To bolster his contention, husband cites two nineteenth century cases, *Lyon v. Hampton*, 20 Pa. 46 (1852), and its precursor, *Hunt v. Breading*, 12 Serg. & Rawle 37 (1824).

Although *Lyon* and *Hunt* contain general language supportive of husband's position, an examination of the factual postures of the two cases and consideration of the expository analyses in other appellate court decisions on judgment executions reveal that the broad wording which husband has noted in *Lyon* and *Hunt* does not have broad application.

■ The Pennsylvania Supreme court stated in *Lyon* and *Hunt* that "[s]eizing goods in execution to the value of the debt, is a discharge of all responsibility on the part of the debtor, and consequently, a discharge of the judgment...." *Hunt*, 12 Serg. & Rawle at 41; *Lyon*, 20 Pa. at 49. However, this statement was merely an expression of the rule of junior encumbrances which dictates that if a senior creditor can obtain satisfaction of a judgment without detriment to a junior creditor, the senior creditor must do so. In other words, if a senior creditor's judgment can be satisfied from the proceeds of a first levy, the senior creditor is not permitted to forego the proceeds of that levy and direct a second levy against other property of the judgment debtor to the prejudice of a junior creditor who has a judgment only against the property which is the subject of the second levy. *Burk, Thomas & Co.'s Appeal*, 89 Pa. 398 (1879); *Campbell, Bredin and Co.'s Appeal*, 32 Pa. 88 (1858); *J.R. Clausen & Son v. Bellevue Building & Loan Assn.*, 7 Pa.Super. 217 (1898).

38

A brief discussion of *Hunt* will illustrate. In *Hunt*, an execution creditor attempted to forego the advantage of a levy upon personalty of the judgment debtor in order to acquire a right to the benefits of a levy on the judgment debtor's realty. But since the execution creditor's pursuance of relief on the realty instead of the personalty would have detrimentally affected a junior creditor's lien on the judgment debtor's realty, the Supreme Court refused to permit the execution creditor to abandon the levy on the judgment debtor's personalty. Thus, the Supreme Court held in *Hunt* and its successor *Lyon* that a levy on a judgment debtor's personalty in an amount adequate to cover the execution creditor's judgment suspends the execution creditor's right to make a second levy on property of the judgment debtor where the creditor's relinquishment of the benefits of the first levy would prejudice the position of a junior creditor of the judgment debtor. *Burk, Thomas & Co.'s Appeal; Campbell, Bredin and Co.'s Appeal; J.R. Clausen & Son;* 14 Standard Pennsylvania Practice 2d § 78:26, at 30. " 'No more was determined in *Hunt v. Breading* than that an execution-creditor, whose levy has kept others at bay, shall not abandon it and assign his judgment for the consideration of payment, as an existing lien on the debtor's land.' " *Campbell, Bredin and Co.'s Appeal,* 32 Pa. at 92 (citation omitted).

The rule recognized in *Hunt* and *Lyon* has been modified by more recent appellate court decisions. In *Burk, Thomas & Co.'s Appeal,* 89 Pa. at 401, the Pennsylvania Supreme Court observed that

> [i]f an older judgment-creditor ... levies ... upon personal property, these acts alone neither pay his debt, nor postpone his lien upon the debtor's land to that of a junior judgment.... The dicta found in a number of cases resting on *Hunt v. Breading,* would not stand on the present rule. Yet it is as true now as then that, as between distributees [creditors], what does not amount to a satisfaction of the debt, as between debtor and creditor, may postpone a prior lien-creditor to a junior one. But

postponement must be on other grounds than satisfaction of the debt by a mere levy of goods.

*See also Campbell, Bredin and Co.'s Appeal; J.R. Clausen & Son.*

In any event, the facts of the instant appeal are clearly distinguishable from those in *Hunt* and its progeny. The cases premised upon *Hunt* concern the effect between creditors of a levy on a judgment debtor's goods whereas the present appeal concerns the effect between the execution creditor and the judgment debtor of the levy on the debtor's personalty. Unlike the execution creditors in *Hunt* and *Lyon*, for example, wife has not tried to avoid the outcome of a first levy in order to be entitled to the proceeds of a second levy on other property of the judgment debtor. Wife has not attempted to abandon any benefits of a prior levy and to endanger thereby the position of a junior creditor. To the contrary, wife has sought to realize a gain from her first levy against husband's property which culminated in the sheriff's sale of husband's Bronco II and camper. Thus, the holding in *Hunt* and its successors is inapposite to a resolution of the current appeal.

The significance of a levy on a judgment debtor's property as it affects the relationship between the execution creditor and the judgment debtor, was explained by the Pennsylvania Supreme Court in *Lytle v. Mehaffy*, 8 Watts 267, 275 (1839):

It was said that the reason why a bare seizure [levy] amounted to a satisfaction of the debt, was, because the defendant [judgment debtor] in the execution thereby lost his goods and became divested of his property in them. But this ... is not so to the full extent claimed; for it has never been said, much less adjudged, that the officer [sheriff], the creditor or any body else becomes vested, by means of the seizure alone, with absolute property in the goods. If the seizure, then, does not change or vest the absolute property in some other person than the defendant [judgment debtor] in the execution, it must, of course, still remain in him; and no doubt it does until a sale is

made, by the officer [sheriff], of the goods, which transfers and vests the whole right of property in the purchaser at the sale. The officer [sheriff], by the seizure under the execution, acquires merely a special property in the goods, which would enable him to maintain trespass or trover for them if improperly taken from him; and under the authority of the law, he is invested with full power to sell and transfer the absolute property in them. . . . It is only a power coupled with an interest at most, that the officer [sheriff] has over the goods, because a payment or tender [on behalf of the judgment debtor] of the [judgment] money to him at any time before he has effected a sale of them, will divest him [the sheriff] of all right in and authority over them. Therefore, when it is said that the seizure of a defendant's [judgment debtor's] personal property, by virtue of an execution against him either divests him of his right of property therein, or amounts to a satisfaction of the debt, it must be understood to be so only *sub modo*, in a qualified and limited sense.

*See also J.R. Clausen & Son.*

▇ In other words, as between the execution creditor and the judgment debtor, a levy upon the judgment debtor's property to the value of the underlying judgment does not constitute a satisfaction of the judgment because the levy does not completely divest the judgment debtor of his interest in the levied upon property and thus does not ensure that the execution creditor's judgment will be paid from any fruit of the levy. *Lytle; J.R. Clausen & Son.* At any time before the sheriff's sale of the levied upon property, the levy may be defeated by acts of the judgment debtor or others.[1] *Lytle; J.R. Clausen & Son; see Hoard v. Wilcox,* 47 Pa. 51 (1864).

▇ Having determined that the mere levy on husband's personalty did not satisfy wife's judgment for support

---

**1.** For example, under Pa.R.C.P. No. 3120, a sheriff may abandon a levy if the execution creditor fails to pay "promptly upon demand . . . the sheriff's proper fees and costs, or . . . sale of the property levied upon is not held within six (6) months after levy, unless the proceedings are stayed or the time for sale is extended by the court."

arrearages, we now consider whether, as husband alternatively asserts, the sheriff's sale of husband's personal property fully discharged the judgment against husband.

█ A sheriff's sale of levied upon property passes to the purchaser any interest which the judgment debtor may have had in that property. *Taylor v. Bailey*, 323 Pa. 278, 185 A. 699 (1936); *Wells v. Van Dyke*, 106 Pa. 111 (1884); *Lytle; J.R. Clausen & Son;* Pa.R.C.P. No. 3252; 13 Standard Pennsylvania Practice 2d § 75:45. Consequently, when a judgment debtor "has been deprived of his property by the [sheriff's] sale, the proceeds of that sale are a satisfaction pro tanto of the execution producing that fund. . . ." *J.R. Clausen & Son*, 7 Pa.Super. at 222; *Campbell, Bredin & Co.'s Appeal; Beachy v. Miller*, 103 Pa.Super. 1, 157 A. 336 (1931); *In re Estate of Wetzler*, 3 Pa.Super. 435 (1897). That is, the judgment which occasioned the execution procedures is discharged to the extent that the proceeds of the sheriff's sale are applied to pay the judgment. *Campbell, Bredin & Co.'s Appeal; Beachy; J.R. Clausen & Son; In re Estate of Wetzler;* 14 Standard Pennsylvania Practice 2d § 78:27.

█ At the sheriff's sale in the case sub judice, wife purchased the levied upon Bronco II and camper for $89.34 representing the execution costs. Pa.R.C.P. No. 3133. But in buying at the sheriff's sale, wife obtained only that interest in the Bronco II and camper which husband had. *Taylor; Wells;* Pa.R.C.P. No. 3252. Accordingly, wife acquired the Bronco II and camper subject to the secured interests of the credit company which had lent husband the purchase money for those items. *Bloom v. Hilty*, 427 Pa. 463, 234 A.2d 860 (1967); *Lantzy v. Velest Coal Co.*, 45 D. & C.2d 502 (1968). Because the secured interests of the credit company had priority over wife's execution lien based on the judgment for support arrearages, *Bloom; Lantzy,* the credit company took possession of the Bronco II and camper in payment of the outstanding balance of its purchase money loans to husband. Hence, the sheriff's sale did not produce any proceeds which could be applied to

payment of wife's judgment against husband, and the trial court properly refused to hold that the sheriff's sale had either partially or fully discharged wife's judgment for support arrearages. *See Campbell, Bredin & Co.'s Appeal.*

Order affirmed.